Haix, Judge,
contra.' — I readily agree with my brethren, that the County Court next subsequent to that at a ver(i¡c¿ jta(] {)eeti rendered against the prisoner, j,a¿ a right to pronounce judgment upon such verdict. I also agree with the counsel for the prisoner, that where a slave was tried upon a criminal charge, by a special Court created under the act of 1791 or 1793, it was not competent for any other than such special Court to pass judgment against him; because such Courts only sat from time to time, as occasion required; each Court was distinct from the other. Besides, not being Courts whose records and proceedings were directed to be preserved, it was impossible for a subsequent Court to know with certainty what a former Court had or had not done. This is not the case with the County Courts. A record is made of all their proceedings, and it may be seen with the greatest certainty what has or has not been done. If so, no mischief can result from one Court doing that which it sees another-Court .has omitted to do, but which it ought to have done. In addit.on to this consideration, it is to be observed, that the County Courts have their regular terms throughout the year, and although the individuals who hold them are not the sanie at different times, yet in contemplation of Law, each is the same Court, and must be so considered as long as the law creating them is in force.
But a strong argument has been attempted to be drawn from the act of 1794, ch. 11, which declares, “that it shall be the duty of the County Court, '•when sitting on the trial of any slave or slaves, or of three justices when they shall be sitting on such trial, to pass judgment,” &c. But let us enquire what was the cause of passing that act. By the act of 1793, ch. 5, (by which the benefit of trial by Jury was extended to slaves,) the duty of the Jury, and of the Court under whom they acted, were not distinctly defined; and the act of 1794 was passed for the purpose of pointing out the province of *103 each, and ás I view it, for no other purpose. And although the Legislature have used the words ee when sitting on the trial of any slave,” &c. yet I cannot give to these words, when connected with the other words of the act, and with other acts passed upon the same subject, the construction contended for; that is, that no subsequent County Court had the legal power to pass sentence against the prisoner Washington, but that that exclusively belonged to the Court who presided when the. verdict was rendered.
If, then, the Court possessed such power, had the prisoner a right to the benefit of an appeal or writ of error ? It is with reluctance that I dissent from the opinion entertained by my brethren on this point. I shall endeavor, however, as it is my duty to do, to assign my reasons for this dissent. The first act of Assembly that relates to the trial of slaves for crimes or misdemeanors, was passed in the year 1741, ch. 24. The 48th section of that act empowered three justices of the peace and four freeholders, owners of slaves, upon oath to try all manner of crimes and offences that should be committed by any slave, &c. at the court-house of the county, and to pass such judgment upon such offender, according to their discretion, as the nature of the crime or offence should require. . The same section also directs the manner in which such special Court should be convened, when occasion might require if. The .next act passed, on this subject was passed in 1793, ch. 5. Ry this act, the benefit of the trial by Jury was extended to slaves charged with offences, “ the punishment whereof extends to life, limb or member.” It will be of importance to bear in mind, that by this act the Sheriff is directed to convene a special Court, to wit, three justices of the peace and a jury of good and lawful men, owners of slaves, to try slaves charged witli such offences, provided that the County Court shall not meet within fifteen days from the time of commitment of such slaves. The third act on this subject, was passed in 1794, ch. 11, *104 which declares that it shall be the duty of the Jury to give a verdict of guilty or not guilty on the evidence, . amj on -¿he verdict so given, it shall be the duty of the County Court, when sitting on the trial of any slave or slaves, or of three justices when they shall be so sitting, to pass judgment on such slave, &c. The fourth and last act on this subject, was passed in the'year 1807, ch. 10. This act repealed all others which authorised Courts to be specially convened for the trial of slaves charged with offences, and declared that in future all such offences should be tried at the regular terms of the County Courts, under the same regulations and restrictions as by law were then directed.
I have thought it important in this case, that all the acts of Assembly on this subject should be brought into view. It has not been contended, nor would the ground be tenable, that an appeal or writ of error would lie from any special Court created by act of Assembly: because, in the first place, in none of the acts is an appeal or writ of error spoken of,- secondly, because the act of Assembly, commonly called the Court Law, which declares, “ that if either Plaintiff or Defendant shall be" dissatisfied with any sentence, judgment or decree of the County Court, he may pray an appeal,” was passed in 1777, long after the act of 1741, which first established the special Courts i and thirdly, because the act of 1777 speaks of appeals and writs of error from the County Courts only, to the Superior Courts. However, if such special Courts should transcend the limits prescribed to them, no doubt there ought to be a correcting power in the Superior Courts, and such power they certainly pos scss.
But it is said, that since the act of 1807, which directs that slaves charged with offences shall be tried at the regular terms of the County Courts, the prisoner is entitled to an appeal or writ of error, because the act of 1777 gives the benefit of an appeal or writ of error to any person. Plaintiff or Defendant, who ma.y be dissa *105 tisfied witli any sentence, judgment or decree of the County Court. This seems to be the ground on which the argument for the prisoner rests. With a view to ascertain the meaning of the Legislature, let us examine the acfc&'of 1793 and 1794, before mentioned. By the former, in case a slave were committed within fifteen days before the sitting' of the County Court, such slave must be tried by the County Court at its regular term, and rta-t by a special Court. But if s^clvslave was committed to jail more than fifteen days before the sitting of the County Court, the Sheriff- is directed to convene a special Court, to wit, three^óstices and a Jury, &c. as is evident from the act of 1794, which says, “that on the verdict of the Jury it shall be the duty of the County 4Court, when sitting-on the trial of any slave or slaves, or of three Justices when they shall be sitting on any such trial',' to pass judgment, &c. agreeably to law. The Legislature,Jm defining the duties of the Courts and Ju--■fies, in this act, speak of the County Courts as well as - tlie three Justices ; by which I understand them to mean special Courts convened by the Sheriff: because it depended on circumstances, whether the trial might be in "the one Court or the other $ and I suppose that each ‘ Court, as to the trial of slaves, possessed precisely the-same powers. But if an appeal from the County Coxirt be a matter of right, or if such Court is bound to grant a writ of error when asked for, what would be the consequence ? A slave is'committed to jail for a capital of- ■ fence, more than fifteen days before the sitting of the County Court; another is committed to jail upon a si-imilar charge within fifteen days of that time : with res- ' pect to the first, there must be a special Court convened ; 'the latter must be tried in the County Court. Is it likely that the Legislature intended, the one tried in the County Court should be entitled to an appeal or writ of error, •and the óthé'r should be deprived of this right ? By the - act of 1741, the trial of slaves was entrusted tp a special *106 Court, consisting’ of three justices anil four freeholders. By the act of 1793, a Jury was substituted in the place J . t of the four freeholders ; but in case the slave was comm[(ted to jail witliin fifteen days before the sitting’ of the County Court, then such County Court was sinstituted in the place of the special Court. It never could b.e intended that such County Court should, as to the trial of slaves, possess more or less power than three justices, in case they had been convened as a special Courtly the Sheriff, so that the slave tried in the County Court should have more privileges than if he had been tried in a special Court. If he cghld not move his case by way of appeal from the one Court, he certainly could not from the other.
But the act of 1807, it is said, gives the right of ap€ peal by implication.- Let us examine this act. It declares that all slaves charged with criminal offences, the punishment of which extends to life, limb» or member, shall be tried at the regular terms of the County Court, &c. under the same regulations and restrictions as by Law there directed. The only effect of this act, and its sole purpose, were to do away the necessity of convening special .Courts. But the same powers which those special Courts possessed and exercised, and the same powers which, before the passing of that act, the County Courts possessed and exercised, in case a slave was committed to jail within fifteen days of the sitting of such Court, were by the act of 1807, transferred to the County Courts, at their regular terms.. The act is express, that the trials shall take place under the same rules, regulations and restrictions as by Law there directed. The Legislature had some reason for passing this act, and probably it was, that greater notoriety might attend the trial, and that impartial justice might thereby be more certain to be administered. But I think the object could not have been, to give to the slave so tried, a right to appeal. If that bad been an object, the Legislature *107 ■would have so expressed their meaning. It is therefore my opinion, that no appeal lay from the special Courts created by the act of 1741, continued with some alteration by the act of 1793 ¿ or from the County Courts, which had jurisdiction to try slaves committed to jail within fifteen days of the time of their sitting : and that the County Court of Warren did right in refusing an appeal in the present case ; because they possessed only the same powers, and stood precisely in the same situation, as to the trial of slaves, with those Courts which preceded them.